CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE. VA
FILED

OCT 0 9 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 3:06-cr-00023-1 |
| | : Criminal No. 3:06-cr-00023-2 |
| KENNETH HARVEY and | : |
| MICHAEL KRONSTEIN, | : |
| Defendants. | : MEMORANDUM OPINION |

Following a six-day jury trial in December 2006, Defendants Kenneth Harvey and Michael Kronstein were convicted of committing honest-services wire fraud and bribery.[1] Each was sentenced to incarceration, and each was ordered jointly and severally liable for restitution of $383,621. On July 14, 2008, the United States Court of Appeals for the Fourth Circuit issued an opinion vacating the restitution order and remanding the matter for further proceedings, but in all other respects affirming Defendants' convictions and sentences. *United States v. Harvey*, 532 F.3d 326 (4th Cir. 2008). The Fourth Circuit concluded that, for restitution purposes, I erred in using the amount of profit received by Mr. Kronstein's company to approximate the actual loss suffered by the United States Army. *Id.* at 340-341. The Fourth Circuit remanded the case for me to determine whether "new restitution orders should issue and in what amount and form." *Harvey*, 532 F.3d at 341. Accordingly, I conducted a hearing on this matter, and I now make the following findings by a preponderance of the evidence regarding the actual loss incurred by the Government.[2]

---

[1] Defendant Kenneth Harvey was an United States Army official who engineered the award of a multi-million-dollar government contract to a company owned and controlled by his close personal friend, Defendant Michael Kronstein. Throughout the three-year performance of the contract, Harvey solicited and accepted payments from Kronstein in exchange for a series of official actions by Harvey on behalf of Kronstein's company.

[2] Prior to the hearing, the Government and counsel for Mr. Kronstein submitted sentencing memoranda; after the hearing, I entered an Order directing the Clerk of the Court to arrange for the expedited transcription of the hearing, and I have reviewed the transcript. This is a sentencing matter on remand. Restitution is an element
(continued...)

Defendant Kenneth Harvey was a civilian employee of the United States Army's Intelligence and Security Command Headquarters ("INSCOM"). The Government was performing certain work and had the capacity to continue doing so, but Harvey and Kronstein contrived a scheme whereby a company, Program Contract Services ("PCS"), was formed by Kronstein to do that work. Harvey knew what the work required, yet greatly inflated the number of employees and the qualifications that were needed to perform the work. Although Harvey certified to the Government that only PCS had the capacity to do the work, at the time of contracting PCS had no capacity whatsoever. Nonetheless, Harvey engineered the award of a multi-million dollar government contract to PCS. Throughout the three-year performance of the contract, Harvey solicited and accepted payments from Kronstein in exchange for a series of official actions by Harvey on behalf of PCS. This conduct led to a six-day jury trial in this Court in December 2006, at the conclusion of which Defendants were found guilty of having committed honest-services wire fraud and bribery.

It is evident to me that, but for Defendants' bribery and honest-services fraud scheme, the Army would never have awarded any contract to any company to perform the work contemplated by the PCS contract, because INSCOM already had the workers in place to perform that work. Nonetheless, although there was no need for the contracted services, the fact remains that PCS did

---

[2](...continued)
of sentencing, *see* U.S.S.G. § 5E1.1, and the United States Sentencing Guidelines provide that, for sentencing purposes, an evidentiary hearing "may sometimes be the only reliable way to resolve disputed issues," U.S.S.G. § 6A1.3, comment (2008). Furthermore, the Court may schedule an additional hearing pursuant to 18 U.S.C. § 3664(d)(5) to address disputed issues of restitution. *See also*, *U.S. v. Gordon*, 393 F.3d 1044, 1049-1050 (9th Cir. 2004) (observing that the district court held an evidentiary hearing pursuant to § 3664(d)(5) to resolve disputed restitution issues), *cert. denied*, 546 U.S. 957 (2005); *U.S. v. Johnson*, 400 F.3d 187, 198-99 (4th Cir. 2005) (further postponement of post-sentencing restitution hearing was harmless in the absence of a showing that defendant was prejudiced by postponement), *cert. denied*, 546 U.S. 856 (2005). Pursuant to 18 U.S.S.G. § 3664(e), "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."

perform some services, albeit deficiently. Accordingly, I cannot award the Government restitution in the amount of $4,795,265.79, the total payout under the PCS contract. However, I find that the amount attributable to the deficient performance of PCS constitutes a loss to the Government in the amount of at least $319,923.30, and I will award that amount as restitution.

Evidence introduced at trial and re-introduced at the hearing on this matter showed that PCS had a services contract, which required it to expend a fixed "level of effort," *i.e.*, the contract required PCS, in order to receive full payment, to devote a contractually specified number of employees to work a contractually specified number of hours. The "level of effort" requirement meant that the Government was to pay the contractor only for the number of hours worked, not to exceed a specified amount. PCS did not provide the services that were required under the contract, because three contractually required positions remained unfilled. Kronstein's contract proposal identified nine positions, and specified the following costs for the three unfilled positions: Engineer, $122,720.00; Senior Training Manager, $114,400.00; and Training Manager, $106,080.00. The record includes invoices submitted by PCS, and these invoices include these costs. The record also includes records of wire transfers from INSCOM as payment for these invoices. The total loss to the Government for these unfilled positions in 1999 was $319,923.30.[3,4]

---

[3] The Government explains that the difference between the actual loss ($319,923.30) and the sum of the three ghost employee positions ($343,200.00) is caused by the following: a one percent discount the government took for certain of the payments, and $3,180.59 in contractually provided-for labor expenses which went unclaimed by PCS in 1999.

[4] Citing *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 562 F.3d 295 (4th Cir. 2009), Defendant Kronstein contends that the PCS contract was a fixed-price contract and thus the costs for the unfilled positions are not appropriate for restitution because they were, in Defendant Kronstein's terms, "just an estimate." *Custer Battles* was a civil case, a *qui tam* action under the False Claims Act ("FCA"), and concerned a contractor having provided a cost estimate, not a contractual commitment; the contractor in *Custer Battles* was not required to maintain any particular staffing levels in order to receive payment under the contract. 562 F.3d at 308-09. The contractor's
(continued...)

-3-

Accordingly, I find the following by a preponderance of the evidence:

- the contract required PCS to provide nine employees in specific roles to support the work of the Army;

- PCS failed to provide employees for at least three of the nine positions, namely that of engineer, senior training manager, and the training manager;

- the Defendants caused the Army to pay for these three positions because Defendant Kronstein caused invoices to be submitted in almost the full amount of the contract, and Defendant Harvey (or his subordinate) approved these invoices notwithstanding that PCS was not providing all of the required services under the contract;

- the government suffered $319,923.30 in harm due to the fact that PCS billed it for three ghost employees;

- and each defendant is jointly and severally liable for restitution in the amount of $319,923.30.

For these reasons, restitution will be awarded to the Government in the joint and several amount of $319,923.30 against Co-Defendants Kenneth N. Harvey and Michael G. Kronstein. An Amended Judgment will be entered forthwith, and Garnishment Disposition Orders will follow in due course.[5]

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTERED: This 9th day of October, 2009.

---

[4](...continued)
submission of the cost estimate in *Custer Battles* was found not to constitute fraud under the FCA. *Id.* The case against Defendants Harvey and Kronstein is a criminal action for bribery and honest-services wire fraud, of which Defendants have been convicted, with their convictions affirmed on appeal. There is no question that Defendants' conduct was fraudulent. And, as discussed above, it is clear that the specified costs in the instant case for the contractually promised services of an Engineer, a Senior Training Manager, and a Training Manager are not "just an estimate."

[5] On July 22, 2008, I entered an Order suspending Garnishment Disposition Orders that previously had been entered in this case against Defendant Harvey.

*signature*

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE